IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **JOSEPH LAMANNA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CITY OF HENDERSONVILLE, TENNESSEE and LEE CHAMBERS in his official and individual capacity,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 3:24-cv-01500**<br>**Judge Aleta A. Trauger** |

**MEMORANDUM**

Plaintiff Joseph Lamanna asserts claims under 42 U.S.C. § 1983 against the City of Hendersonville, Tennessee ("City") and Lee Chambers, a detective with the Hendersonville Police Department ("HPD"), based on alleged violations of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.[1] The plaintiff also asserts various state law claims against Chambers. (Compl., Doc. No. 1.)

Now before the court is the defendants' Motion for Summary Judgment (Doc. No. 30), which, for the reasons set forth herein, will be granted in part and denied in part.

## I. LEGAL STANDARD – RULE 56

Under Federal Rule of Civil Procedure 56, any party "may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P.

[1] The parties have stipulated to the dismissal of the claims against the HPD, which was also named as a defendant in the Complaint. (*See* Doc. No. 29.)

56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

By its very terms, Rule 56 anticipates "that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine.'" *Id.* at 248.

"[A] fact is 'material' within the meaning of Rule 56(a) if the dispute over it might affect the outcome of the lawsuit under the governing law." *O'Donnell v. City of Cleveland*, 838 F.3d 718, 725 (6th Cir. 2016) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the [nonmoving

party]." *Id.* The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id.*

## II. FACTS AND PROCEDURAL HISTORY

On September 21, 2024, eighteen-year-old "A.B." contacted the HPD to lodge a complaint against her uncle, plaintiff Joseph Lamanna. (Plaintiff's Responses to Defendants' Statement of Undisputed Material Facts ("PRSUMF"), Doc. No. 51 ¶ 1.[2]) The telephone call from an HPD officer to take her complaint was recorded and is in the record. (Manually filed Doc. No. 41, Defs.' Ex. B, Audio File of HPD telephone interview of A.B. ("Audio File").[3]) During this telephone call, A.B. reported that she had lived with her uncle and his wife (now ex-wife) for two and one-half years, after an incident involving her running away from home and being found with an older man while she was living with her grandparents in Michigan.[4] She claimed that in early 2021, when she was fourteen or fifteen, Lamanna had downloaded a "spyware app" onto her cell phone that allowed him to "literally see everything" she did on her phone on his computer. (*Id.*) When she sent nude images of herself to her boyfriend, Lamanna showed her the images on his computer while "yelling" at her and "reprimanding" her. (*Id.*; *see also* PRSUMF ¶¶ 3–4; Doc. No. 36 at 3, HPD Incident Report)) A.B. believed that Lamanna might have downloaded the images onto his computer and could "possibly" have kept them, but she clearly had no information regarding

---

[2] The plaintiff purports to admit only that "A.B. contacted HPD on or about September 21, 2024" and that "a report was filed." (PRSUMF ¶ 1.) In other words, he admits the substance of the statement. He "disputes" facts that are not asserted in the defendant's factual statement. (*See id.* ("Plaintiff disputes, however, that A.B.'s allegations were verified or substantiated at that time, and notes that no criminal charges have ever been filed against Plaintiff as a result of this investigation.").) The court disregards such statements that are not responsive to, and exceed the scope of, the defendant's factual statements.

[3] The defendants did not supply a transcript of this recording.

[4] The parties do not explain why A.B. was living with her grandparents rather than her parents.

whether he had kept the images. (Audio File.) A.B. also claimed that Lamanna had engaged in inappropriate conduct with her (that did not actually rise to the level of sexual abuse) on a couple of occasions, also while she was approximately fifteen years old. She stated that she lived with her uncle until February 2022, when she moved back in with her grandparents in Michigan.[5] (*Id.*) Hendersonville Detective Lee Chambers was assigned to investigate A.B.'s claims. (RSUMF ¶ 2.)

Chambers contacted Lamanna and requested an interview. (*Id.* ¶ 5.) Lamanna agreed and met with Chambers at the HPD headquarters on November 7, 2024. (*Id.*) During the interview, Lamanna admitted that he had installed spyware on A.B.'s phone and had intercepted nude images of A.B. with the spyware. (*Id.* ¶¶ 6–7.) Lamanna also explained during the interview that A.B. had a prior history of running away multiple times and of sending inappropriate photos of herself to older men. (*See* manually filed Doc. No. 41 (Defs.' Ex. C, Video File of Chambers interview of Lamanna ("Video") 16:33:17–16:34:05, 16:39:34–16:40:22.[6]) Because of that history, he helped his mother (A.B.'s grandmother) install "parental spyware" on A.B.'s phone while A.B. was still living with her grandmother, which resulted in a nude photo of A.B. being sent to his computer, which he sent to his mother so that she could send it to a detective in New Jersey. (*Id.* at 16:34:56–16:36:00; *see also* Lamanna Dep. 30, 33–34.[7]) A.B. knew about the spyware because they confronted her with the images. (Video 16:36:12–16:36:20.) Lamanna denied keeping any images of A.B. and asserted that they had been deleted years ago, in particular because the detective in

[5] Although A.B. stated that she lived with her uncle for two and one-half years, the timeline she supplied suggests that she lived with him for just over a year.

[6] Neither party has filed a transcript of this interview. The court-supplied timestamps are approximations.

[7] Both parties filed excerpts of Lamanna's deposition rather than the complete transcript. The defendants' excerpts are filed at Doc. No. 30-1, and the plaintiff's excerpts are filed at Doc. No. 46-1.

New Jersey had alerted him to the fact that his sending the nude image of A.B. to his grandmother, to assist in the prosecution of the older man in New Jersey to whom A.B. was sending photos, was illegal. (*Id.* at 16:36:08–16:36:21, 16:45:10–16:45:50.)

Asked whether he intercepted any images of A.B. while she was living with him, Lamanna believed that she may have sent images to her school boyfriend at the time, that they confronted her about it, and that he may have "flipped out a little." (*Id.* at 16:44:45–51.) Asked if he had kept any of those images, he stated unequivocally, "No." (*Id.* at 16:45:10–15.) Asked, "Ultimately, what did you do with the images that were sent to that detective?" Lamanna again responded that he had deleted everything after the detective in New Jersey warned him about sending child pornography images. (*Id.* at 16:46:50–16:47:44.)

The only time Lamanna's cell phones came up was when Chambers asked him if, when they found the pictures on her phone, he was aware that spyware "could be set up to where when anybody sends a text message or makes a phone call, it goes to somebody else's phone or device." (*Id.* at 16:47:50–16:48:05.) Lamanna, speaking over him, said that, "even if you did, this phone [picking up one of his phones] is only like eight months old." (*Id.* at 16:48:05–10.) He reiterated that any image he might have had was "long gone" and that Chambers could "contact Samsung and get [his] old phone" if he wanted to. (*Id.* at 16:48:10–18.) Lamanna reiterated, "we're talking about three years ago now," and he "didn't keep any of that stuff." (*Id.* at 16:48:18–53.)

Lamanna had two cell phones with him during the interview, sitting on the table beside him—apparently a personal phone and a work phone. (*See generally* Video.) At that point, Chambers told Lamanna that it "would help" if he could look at Lamanna's phones to verify what Lamanna had told him, and Lamanna immediately declined, stating that is "definitely not happening." (*Id.* at 16:49:00–16:49:06.) He explained that he had pictures on his phone, but not of

A.B., and he also understood that Chambers could get a warrant to search the phone if he wanted to. When Chambers asked Lamanna if he minded hanging out for "just one second," Lamanna responded, "Am I being detained?" Chambers paused before responding that he was not being detained. (*Id.* at 16:49:53–16:50:02.) Lamanna stood up to leave, at which point Chambers informed him, "I do need your phones" and "I'm probably going to get a warrant." (*Id.* at 16:50:02–16:50:05.)

Lamanna exited the interview room, and the conversation continued in the hallway, audible but not visible. Lamanna and Chambers got into an argument about whether Chambers could keep Lamanna's cell phones without a warrant, with Lamanna insisting that Chambers needed a search warrant to confiscate his phones and Chambers repeatedly telling Lamanna to "listen to me" and that he could take the phones on the spot, without a warrant or an arrest. (*Id.* at 16:50:06–16:50:52.) Ultimately, Chambers told Lamanna that he was being detained in order for Chambers to take possession of Lamanna's telephones; after seizing the phones, he told Lamanna he could leave. (*Id.* at16:50:53–16:51:10.)

According to Lamanna's deposition testimony, as he was heading out of the police department, Chambers put his foot on the door to prevent him from leaving. (Lamanna Dep. 57.) At that point, Chambers told him he was detained, "pinn[ed] [Lamanna] up against the wall with his right arm," and took his cell phones. (*Id.* at 57–58.) He then told Lamanna that he was free to go. (*Id.* at 58.) Lamanna further explained that Chambers grabbed his "arm with his right hand" and swung it around and then pinned him with Chambers' "forearm against [Lamanna's] arm and chest." (*Id.*) Lamanna "froze" as soon as Chambers pinned him against the wall. (*Id.* at 61.) He was pinned for approximately five seconds while Chambers took one phone from his free hand and the other from his pocket, after patting him down to determine which pocket it was in. (*Id.* at

60–61.) Lamanna believed Chambers may have bumped his hip against him in the process, but Lamanna was not physically injured while Chambers pinned him and took his phones. (*Id.* at 66.)

At no point during this interaction did Lamanna suggest that he would destroy evidence on his phones. (Doc. No. 46-2, Chambers Dep. 185, 210.) A.B. also never told police officers that she saw nude images of herself or pornographic images on Lamanna's *phone*. Instead, she said he showed her images on his computer. (*See id.* at 105, 114–15.)

Chambers attests that, during his interview of Lamanna, he "developed the belief that Plaintiff's two cell phones . . . contained evidence of a crime A.B. had alleged against him . . . due to the fact that digital data can be easily transferred between devices." (Doc. No. 40, Chambers Decl. ¶ 7.) Chambers acquired a search warrant to search the cell phones the day after Lamanna's interview, on November 8, 2024. The record does not indicate how long the search took or when the phones were returned to Lamanna.[8] It is apparent that no illicit images were discovered, and Lamanna was never arrested or charged with any crime.

HPD Police Chief James Jones testified that Chambers' acts of detaining Lamanna and physically seizing the two cell phones were consistent with HPD policy and/or standing orders and he expressly ratified Chambers' conduct in seizing the two phones based on exigent circumstances. (Doc. No. 46-3, Jones Dep. 10–11, 21–26, 34–37.) More specifically, he testified that, pursuant to HPD official policy, "anytime that there is an electronic device, there is the potential for destruction of evidence that could be contained on the device," and, moreover, that even if "a person does not make a statement that they intend to destroy the evidence, . . . the detective still has exigent circumstances to take the two phones from the person." (*Id.* at 24, 25.)

[8] Lamanna testified in his October 28, 2025 deposition that he believed he got his personal Samsung phone back from the HPD sometime over the "summer." (Lamanna Dep. 19.)

The plaintiff filed his Complaint against the City and Chambers on December 26, 2024, approximately six weeks after the seizure of his phones and before the plaintiff received notice that a Search Warrant had been issued and before his phones were returned to him. (Compl., Doc. No. 1 ¶¶ 48–49; Answer, Doc. No. 12 ¶¶ 48–49.)

Based on these and other facts, the Complaint asserts federal claims against Chambers individually under 42 U.S.C. § 1983 for (1) the unlawful seizure and detention of the plaintiff's person, and the use of excessive force in effecting the seizure, in violation of the plaintiff's Fourth Amendment rights (Count 1); (2) the unlawful search, seizure, and prolonged retention of the plaintiff's phones, in violation of the plaintiff's Fourth Amendment rights (Count 2); and (3) retaining the plaintiff's phones for an unreasonably long time, in violation of the plaintiff's right to due process under the Fourteenth Amendment (Count 3); and state common law claims for battery, assault, false imprisonment, invasion of privacy, and conversion (Counts 7–11).[9] Lamanna also sets forth "Municipal Liability Monell Claims" (Counts 4–6) against the City under § 1983 for Fourth and Fourteenth Amendments, asserting that the City is liable for the violations of the plaintiff's constitutional rights.

The defendants have now filed their Motion for Summary Judgment, along with a Memorandum of Law (Doc. No. 31), Statement of Undisputed Material Facts ("SUMF") (Doc. No. 32), and the evidentiary material cited in the SUMF (Doc. Nos. 30-1, 33, 36–37, 41). As discussed in greater detail below, the defendants argue that (1) the undisputed facts establish that Chambers did not violate the plaintiff's Fourth or Fourteenth Amendment rights; (2) Chambers is entitled to qualified immunity; (3) without a "colorable constitutional claim against Chambers,"

[9] The Complaint also sets forth a claim for "Recovery of Phones," which appears to have been rendered moot since the filing of the Complaint, at least as to one of the phones. (*See* Lamanna Dep. 19.) In any event, neither party references this claim in the summary judgment briefing.

the municipal liability claims against the City must be dismissed; (4) even if Chambers is not entitled to summary judgment, the plaintiff has not presented facts establishing municipal liability; (5) Chambers has state common law immunity from the state claims to the same extent he has qualified immunity from the federal claims; and (6) alternatively, if all federal claims are dismissed, the court should decline to exercise supplemental jurisdiction over the state claims.

The plaintiff filed his Response in opposition to the Motion for Summary Judgment (Doc. No. 46), the PRSUMF (Doc. No. 51), and his own evidentiary material (Doc. Nos. 46-1, 46-2, 46-3, 48–49, 57). The defendants filed a Reply. (Doc. No. 56.)

## III. ANALYSIS

The crux of this case is the legality of the seizure of the plaintiff's cell phones. The court, therefore, considers that issue first. The court ultimately finds that, because the seizure of the cell phones was not justified by probable cause, that seizure, as well as the seizure of the plaintiff's person and the use of force to effect that seizure, resulted in violations of the plaintiff's Fourth Amendment rights. Having reached that conclusion, the court further finds that the plaintiff's rights were clearly established at the time of the violations and that Chambers is not entitled to qualified immunity.

### A. Count 2

Count 2 of the Complaint asserts that Chambers violated Lamanna's Fourth Amendment rights when he seized the plaintiff's phones without a warrant or legal justification, searched them without a warrant, and retained them for a "prolonged time," in violation of Lamanna's privacy, liberty, and property interests. (*See* Compl. ¶¶ 73, 75–76, 79, 81.) The facts in the record do not indicate that the seizure of the phones, *per se*, implicated the plaintiff's liberty interests, as he was allowed to leave the police station as soon as his phones were seized, or his privacy interests, since the seizure itself did not result in a search of the phones.

The court further notes that, although it is now undisputed that Chambers obtained a warrant before searching the phones, the plaintiff has never sought to amend or supplement his pleading to contest the search of his phones premised upon the warrant. The defendants, noting that the plaintiff's Complaint challenges the *warrantless* search of his phones, argue that this claim fails because it is now undisputed that a search warrant was issued and that the search of the phones was not, in fact, a warrantless search as alleged in the Complaint. In response, the plaintiff argues that the warrant contained factual misrepresentations and material omissions and, therefore, was defective under *Franks v. Delaware*, 438 U.S. 154 (1978). In their Reply, the defendants, in a footnote, object that "Plaintiff's Response, to be clear, is the first time he alleges that the magistrate judge was incorrect in granting Chambers' search warrant." (Doc. No. 356 at 1 n.1.)

What is clear, in any event, is that the *seizure* of the phones without a warrant, the *search* of the phones, and the *prolonged retention* of the phones are different events that must be considered separately.

*1. The Seizure of the Cell Phones*

"The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. As the Supreme Court has recognized, a Fourth Amendment challenge "in the context of personal property, and particularly containers, . . . is typically to the subsequent search of the container rather than to its initial seizure by the authorities," but such seizures themselves may also violate the Fourth Amendment. *United States v. Place*, 462 U.S. 696, 701 (1983). Ordinarily, a seizure of personal property is "*per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *Id.* (citations omitted). At the same time, however, "[w]here law enforcement authorities have probable cause to believe that a

container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *Id.*; *see also United States v. Mason*, No. 21-5384, 2021 WL 5647774, at *3 (6th Cir. Dec. 1, 2021) (quoting *Place*, 462 U.S. at 701). In other words, the seizure of the plaintiff's cell phones by Chambers was permissible under the Fourth Amendment if (1) Chambers had probable cause to believe that the cell phones would yield evidence of a crime *and* (2) exigent circumstances or some other recognized exception to the warrant requirement justified the warrantless seizure.

*a) Probable Cause*

Probable cause exists when there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Brown*, 857 F.3d 334, 339 (6th Cir. 2017) (quoting *United States v. Miller*, 314 F.3d 265, 268 (6th Cir. 2002)). The determination of whether probable cause exists is a "'practical, common-sense decision,' based on 'the totality of the circumstances[.]'" *Brown*, 857 F.3d at 339 (first quoting *Illinois v. Gates*, 462 U.S. 213, 238, (1983); and then quoting *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010)). Generally, for probable cause to exist, there must be a "specific and concrete nexus between the evidence sought and the place to be searched." *United States v. Rodriguez*, 716 F. App'x 387, 389 (6th Cir. 2017) (quoting *United States v. Carpenter*, 360 F.3d 591, 594–95 (6th Cir. 2004) (en banc)). "Stale information cannot support probable cause." *United States v. Lantzy*, No. 22-1472, 2023 WL 6467373, at *2 (6th Cir. Oct. 4, 2023) (citing *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009)).

The defendants argue that Chambers developed probable cause to believe that the plaintiff's cell phones contained evidence of a crime during his interview of Lamanna at the HPD

police station. (Doc. No. 31 at 19.) Specifically, they claim that the following collectively gave rise to probable cause: (1) A.B. claimed that Lamanna had used a "spyware app" to intercept nude images of her when she was fifteen; (2) Lamanna corroborated that allegation, admitting that he helped his mother (A.B.'s grandmother) install a parental spyware app on A.B.'s phone, explaining that she had a history of both running away and of sending inappropriate images of herself to older men; (3) A.B. reported that Lamanna had shown her nude images of herself that he had intercepted; (4) Lamanna admitted that the spyware app sent nude images of A.B.; and (5) Lamanna put his cell phones "at issue" when he told Chambers he could "contact Samsung to get my old phone," though Lamanna was sure that whatever images might have been there would be "long gone." (*Id.* at 19–20 (citing Video 16:48:04).) In addition, Chambers attests that he "developed the belief that Plaintiff's two cell phones, each of which Plaintiff brought with him to the interview, contained evidence of a crime A.B. had alleged against him . . . due to the fact that digital data can be easily transferred between devices." (Chambers Decl. ¶ 7.)

The plaintiff argues that probable cause did not exist, largely because A.B. never claimed to Chambers or to any other HPD officer that she saw images of herself on any *phone* belonging to Lamanna. Instead, she referred to seeing them on his computer, which Chambers himself acknowledged when he was deposed. (*See* Chambers Dep. 114–16, 143–44.) In addition, although he raises the issue in the context of challenging the Search Warrant Affidavit, the plaintiff argues that the evidence on which Chambers relied to establish probable cause "failed on vagueness, nexus, and staleness." (Doc. No. 46 at 11.) Lamanna argues in particular that the Search Warrant Affidavit was intentionally vague, insofar as it referred to "electronic devices," when A.B. only reported seeing images on Lamanna's computer—a fact that Lamanna admitted to Chambers. Similarly, regarding nexus, the plaintiff argues that, because A.B. claimed only to have seen

images on Lamanna's *computer*, nothing in the record connected her allegations to the possibility that any *phone* possessed by Lamanna contained nude images of her, much less the particular cell phones Lamanna had with him during his interview with Chambers. As to staleness, the plaintiff points out that probable cause "must be supported by facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at the time" and that the allegations at issue in this case concerned events that occurred at least three years before the seizure of the phones. (*Id.* (internal quotation marks and citation omitted).)

In their Reply, the defendants argue that the plaintiff appears to be conflating the probable cause required for the seizure of the phones with the probable cause required for the issuance of a search warrant to actually search a seized phone, but they do not actually address the plaintiff's arguments regarding staleness, nexus, or vagueness, other than to repeat that Lamanna himself brought the cell phones into issue by referring to them and claiming that they were new.

While it is true that the plaintiff is conflating the legitimacy of the seizure and the legitimacy of the search—the latter of which is not addressed in the Complaint—the court finds that the same arguments pertain to both. The issue is probable cause, which must have existed to justify the seizure of the phones in the first place. The defendants do not respond to the plaintiff's nexus and staleness arguments, except to insist that it was the plaintiff himself who put his cell phones at issue, thus creating the necessary nexus.

Considering the totality of circumstances here, the court finds that Chambers did not have probable cause to seize the plaintiff's phones, based primarily on staleness. As the Sixth Circuit has explained, probable cause "is concerned with facts relating to a presently existing condition." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006) (citations omitted). Thus, in the warrant context, "the critical question is whether the information contained in the affidavit, when presented

to the . . . judge, established that there was a fair probability that [evidence] would still be found at [the location of the search]." *Id.* (alterations in original) (citations omitted). "[A] warrant is stale if the probable cause, while sufficient at some point in the past, is now insufficient as to evidence at a specific location." *Id.*

Because "[t]he staleness inquiry is tailored to the specific circumstances in each case, . . . the length of time between the events listed in the affidavit and the application for the warrant, while clearly salient, is not controlling." *Id.* (citations omitted). Thus, evidence that might be considered stale in a drug case may not be stale in a child pornography case, due to the differences in the types of crimes at issue. *Frechette*, 583 F.3d at 378.

In the context of child pornography, the Sixth Circuit has held that a period of sixteen months may not render evidence stale because "images of child pornography can have an infinite life span." *Id.* at 378–39. This case, however, is not a standard child pornography case, and the evidence at issue appears to have been *at least* three years old, as the eighteen-year-old A.B. was reporting events that occurred when she was fourteen or fifteen. Even considering the other factors referenced in *Frechette*, the court finds that this length of time is outside the bounds of reasonableness under the circumstances presented here, particularly given the absence of evidence suggesting that Lamanna engaged in any other illegal activity between the time of the events reported by A.B. and his interview by Chambers.[10] In other words, A.B.'s statement to Chambers

[10] Neither party fully developed a staleness argument. The Sixth Circuit has identified the factors relevant to the staleness inquiry to include (1) the character of crime; (2) the nature of the criminal (whether nomadic or entrenched); (3) the thing to be seized (whether perishable or easily transferrable); and (4) the place to be searched. *Frechette*, 583 F.3d at 378 (citing *Abboud*, 438 at 572–73). Here, it appears that the plaintiff is fairly stable, and the law is clear that child pornography is not a "fleeting" crime. But there is simply no evidence in the record to support an inference that the plaintiff was a typical "child pornographer," and the time period at issue here—two to three years—is extraordinary, at least in the absence of any additional evidence tying the plaintiff to child pornography. *Accord, e.g.*, *United States v. Paull*, 551 F.3d 516, 522 (6th Cir.

that she saw nude images of herself on the plaintiff's computer three years ago constitutes stale evidence that cannot be taken into consideration in the determination of whether probable cause existed to seize the phones. Even the plaintiff's corroboration of that evidence—that he had installed spyware on A.B.'s phone that allowed him to intercept anything A.B. sent, which included a nude photo she sent to an older man before she moved in with him and perhaps other images of herself while she was living with Lamanna—is not sufficient to render the evidence current. In short, evidence that child pornography images were on the plaintiff's computer three years before was stale evidence that could not contribute to a finding of probable cause. *See Frechette*, 583 F.3d at 377 ("[S]tale information cannot be used in a probable cause determination.").

The defendants argue that Lamanna brought his phones into play be referring to them first himself when Chambers asked what he had done with the images. But Lamanna raised the issue only when Chambers stated that he was aware that spyware "could be set up to where when anybody sends a text message or makes a phone call, it goes to somebody else's phone or device." (Video at 16:47:50–16:48:05.) Lamanna apparently understood that spyware could be set up to operate in that way but interjected, "even if you did, this phone is only like eight months old." (*Id.* at 16:48:05–10.) He repeated that they were talking about events that occurred three years ago and that any image he might have had was "long gone," but Chambers could "contact Samsung and get [his] old phone" if he wanted to. (*Id.* at 16:48:10–53.) Lamanna, in other words, did not suggest

---

2009) (rejecting staleness argument where the search warrant affidavit relied on thirteen-month-old evidence, but the allegations indicated that the defendant had subscribed to multiple child pornography websites over the course of two years, it was unclear when the subscriptions lapsed, and it was reasonable to believe that the defendant maintained a large cache of images); *Frechette*, 583 F.3d at 379 (finding sixteen-month interval between the defendant's purchase of a one-month subscription to a child pornography website and the execution of a search warrant did not render evidence stale, such that it could be considered in making the probable cause determination).

that images could be on his phones, and his reaction to Chambers' implicit question about whether images were on his phone—despite A.B.'s mentioning only seeing images on Lamanna's computer—did not suddenly create probable cause to believe images were on the phones.

The defendants also argue that Lamanna's conduct after Chambers asked to search his phones—specifically, his refusal to consent, his attempting to leave (after being told he could leave), and his continued refusal to hand over his phones—gave rise to probable cause. (Doc. No. 31 at 15.) The cases the defendants cite for the proposition that "police can take a suspect's 'nervous, agitated, and evasive' behavior into account" (*id.* at 16), however, generally hold that, when police already have reasonable suspicion that a suspect is presently engaged in criminal activity, the suspect's attempt to flee when approached by police may give rise to probable cause to arrest the suspect. *See Dist. of Columbia v. Wesby*, 583 U.S. 48, 59 (2018) (noting that "[u]nprovoked flight upon noticing the police . . . is certainly suggestive of wrongdoing and can be treated as suspicious behavior that factors into the totality of the circumstances" that the police may take into account to determine whether they have probable cause to make an arrest"); *Williams v. United States*, 632 F. App'x 816, 822 (6th Cir. 2015) (police responding to a tip of drug activity in a particular area witnessed the defendant "exit a vehicle and engage in a hand-to-hand transaction with another individual," giving them reasonable suspicion of illegal activity that ripened into probable cause when the defendant fled); *United States v. Dotson*, 49 F.3d 227, 230–31 (6th Cir. 1995) (the suspect's attempted flight after the police already had reasonable suspicion of illegal activity provided probable cause for arrest); *see also United States v. Jeter*, 721 F.3d 746, 756 (6th Cir. 2013) (holding that the defendant's "flight" from police, "in combination with the grabbing of his pocket in a 'high crime area,' provide[d] the inference of suspicious behavior that justifies a Terry stop").

Here, by contrast, Lamanna was not suspected of actively engaging in criminal conduct. His attempt to leave the police station after being told he could do so, and after declining to consent to a search of his phones, was also not the same type of "flight" that could cause a reasonable suspicion of illegal activity to morph into probable cause. Notably, the defendants do not contend that Chambers had probable cause to *arrest* Lamanna. And Lamanna's interest in his own privacy explains his agitation at the suggestion that he turn over his phones. Under the circumstances, the plaintiff's refusal to consent to a warrantless search—even agitated or adamant refusal—cannot establish either reasonable suspicion of criminal behavior or probable cause to search the phones. *Accord Garcia v. Casey*, 75 F.4th 1176, 1190 (11th Cir. 2023) ("[A] defendant's refusal to consent to a search cannot establish probable cause to search." (quoting *United States v. Alexander*, 835 F.2d 1406, 1409 n.3 (11th Cir. 1998)); *United States v. Freeman*, 479 F.3d 743, 749 (10th Cir. 2007) ("Refusal to consent to a search—even agitated refusal—is not grounds for reasonable suspicion.").

*2. Exigent Circumstances*

The defendants argue that probable cause plus exigent circumstances justified the seizure of Lamanna's cell phones. They contend that, to establish exigent circumstances, Chambers must first show "an objectively reasonable basis for concluding that the loss or destruction of evidence is imminent." (Doc. No. 31 at 20 (quoting *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1512 (6th Cir. 1988)).) If he makes that showing, the court must "weigh 'the governmental interest being served by the intrusion against the individual interest that would be protected if a warrant were required.'" *United States v. Dickson*, No. 21-6176, 2022 WL 2348902, at *3 (6th Cir. June 29, 2022) (quoting *United States v. Plavcak*, 411 F.3d 655, 664 (6th Cir. 2005)).

The "urgent need to prevent evidence from being lost or destroyed" is a recognized exigent circumstance that may justify a police officer's seizure of evidence without a warrant. *Sangineto-*

*Miranda*, 859 F.2d at 1511. To invoke the exception, the government must "show an objectively reasonable basis for concluding that the loss or destruction of evidence is imminent." *Id.* at 1512. And the government's "important interest in preventing the spread of child pornography," *Dickson*, 2022 WL 2348902, at *4 (citation omitted), will generally outweigh a brief intrusion of an individual's possessory interest in his phone.

Here, given that the evidence of child pornography being on *any* device owned by the plaintiff was at least three years old and there was *no* evidence that such images had ever been on any cell phone he owned, much less the cell phones he had with him, the court finds that there was no exigent need to seize the plaintiff's phones, irrespective of the fact that it was hypothetically possible that the plaintiff might attempt to delete illegal images from his phones if Chambers did not seize them immediately. While the Sixth Circuit has recognized that it is "objectively reasonable to seize a container an officer has probable cause to believe contains evidence of a crime, rather than leave it unguarded in the hands of a suspect who knows that it will be searched," *United States v. Bradley*, 488 F. App'x 99, 103 (6th Cir. 2012), as already discussed above, Chambers did not have probable cause to seize the plaintiff's phones. The absence of probable cause also obviates the existence of exigent circumstances.

In sum, based on the undisputed facts, the court finds as a matter of law that the seizure of the plaintiff's phones was an unreasonable seizure in violation of the Fourth Amendment.

*3. The Detention and Search of Plaintiff's Phones*

The Complaint, as noted above, articulates a claim based on the prolonged detention of the plaintiff's phones under both the Fourth and the Fourteenth Amendments. The defendants do not directly address the issue of the prolonged detention except to state that Chambers acquired a search warrant for the phones, that the Fourth Amendment, rather than the Fourteenth Amendment, applies to the seizure of property, and that the plaintiff's due process claim is "duplicative of his

more applicable Fourth Amendment claims." (Doc. No. 31 at 22.) But they do not present any additional argument in support of summary judgment on the Fourth Amendment prolonged detention claim.

As an initial matter, the court agrees with the defendants that the claim based on the prolonged detention of the phones in this case arises under the Fourth rather than the Fourteenth Amendment. *Accord, e.g.*, *United States v. Krueger*, 145 F.4th 460, 467 (4th Cir. 2025) ("The Fourth Amendment 'unreasonable delay' doctrine protects property interests, and specifically, an individual's possessory interest in property that belongs to him but has been seized by law enforcement officers. Even a seizure lawful at its inception . . . can violate the Fourth Amendment if its duration unreasonably infringes possessory interests." (internal citations omitted)).[11]

The plaintiff's Response argues that the defendants' "admitted failures support the due process claim independently," but the only case he cites in support of this proposition is *United States v. Place*, 462 U.S. 696 (1983), which addressed Fourth Amendment claims. The court, therefore, will grant summary judgment on the plaintiff's due process claim (Count 3) without further discussion. Regarding his Fourth Amendment claim that makes up part of Count 2, however, the record is unclear regarding the length of time the HPD held the phones or the reasonableness of that duration, for Fourth Amendment purposes. The defendants have not shown that they are entitled to summary judgment on this claim.

Regarding the search warrant and the subsequent search of the phones, the plaintiff never sought leave to amend his Complaint to address the search pursuant to a warrant, as distinct from

---

[11] Some cases have recognized that, "[w]hen property is seized by the government, the person who owns or possesses the property is entitled to due process." *Yu v. US Mint*, No. 8:25CV426, 2026 WL 881726, at *5 (D. Neb. Mar. 31, 2026) (citing *Coleman v. Watt*, 40 F.3d 255, 260 (8th Cir. 1994)). The plaintiff in this case, however, has not alleged or presented evidence to support any facts that would take this seizure outside the scope of the Fourth Amendment.

a warrantless search. Generally, "[p]arties who seek to raise new claims at the summary-judgment stage must first move to amend their pleadings under Federal Rule of Civil Procedure 15(a) before asserting the claims in summary-judgment briefing." *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483,496 (6th Cir. 2019). "By that point, 'a plaintiff has conducted discovery and has had the opportunity to amend the complaint and raise additional theories.'" *Id.* (quoting *West v. Wayne Cnty.*, 672 F. App'x 535, 541 (6th Cir. 2016)). If, on the other hand, "the plaintiff raises the new claims for the first time in the summary-judgment briefing, it generally 'subjects a defendant to 'unfair surprise,' because the defendant has no opportunity to investigate the claim during discovery.'" *Id.* (quoting *M.D. ex rel. Deweese v. Bowling Green Indep. Sch. Dist.*, 709 F. App'x 775, 778 (6th Cir. 2017)). The failure to follow this rule typically "dooms" that claim. *Id.* Because it was not pleaded and, consequently, was inadequately briefed, the court declines to consider the plaintiff's claim that the search warrant was invalid.

**B. Count 1**

Count 1 asserts claims based on the unreasonable seizure of the plaintiff's person and the use of excessive force in conducting that seizure.

*1. The Seizure*

The Fourth Amendment protects against unreasonable seizures, "including seizures that involve only a brief detention short of traditional arrest." *Al-Lamadani v. Lang*, 624 F. App'x 405, 410 (6th Cir. 2015) (quoting *United States v. Mendenhall*, 446 U.S. 544, 551 (1980)). In other words, a Fourth Amendment unlawful seizure analysis requires, first, a determination of whether a "seizure" occurred and, "second, whether that seizure was unreasonable." *Harris v. Langley*, 647 F. App'x 585, 590–91 (6th Cir. 2016) (citing *Terry v. Ohio*, 392 U.S. 1, 16 (1968)). The law is clear that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Id.* at 591 (quoting *Terry*, 392 U.S. at 16). There is no dispute that

Lamanna was "seized" for Fourth Amendment purposes when Chambers briefly detained him, and told him he was detained, in the hallway outside the interview room. The question is whether that seizure was reasonable. "The reasonableness of a seizure is a matter of law." *Crochran ex rel. Shields v. Columbus City Schs.*, 748 F. App'x 682, 685 (6th Cir. 2018). In determining whether a seizure was unreasonable, the court must consider "(1) whether the seizure was justified at its inception; and (2) whether the seizure was permissible in its scope." *Id.* Absent reasonable suspicion, even a brief investigatory seizure is impermissible under the Fourth Amendment. *United States v. Jones*, 562 F.3d 768, 773 (6th Cir. 2009).

The defendants argue that the detention of Lamanna for the purpose of seizing his phone was reasonable because Chambers had developed "reasonable suspicion" that Lamanna might be engaged in criminal conduct and "probable cause" to believe that his phones might contain evidence of that conduct. (Doc. No. 31 at 14–15.) However, regardless of how the defendants spin the facts, Chambers did not have reasonable suspicion that the plaintiff was currently engaged in criminal activity, and he did not seize Lamanna to investigate a reasonable belief about possible illegal activity. Instead, he allegedly believed that Lamanna's cell phones might contain old images of A.B. In other words, the seizure of the plaintiff's person was not investigatory; it was purely for the purpose of taking his phones.

But, as set forth above, Chambers lacked probable cause to justify the seizure of the phones. If taking Lamanna's phones *were* justified by probable cause, then Chambers would arguably have been justified in seizing Lamanna for the purpose of seizing his phones. *Accord, e.g.*, *Michigan v. Summers*, 452 U.S. 692, 700 (1981) (holding that police officers' temporarily restraining a person, absent probable cause, while conducting a search in that person's home pursuant to a validly executed search warrant, is reasonable). Conversely, if taking Lamanna's phones was unjustified,

then the seizure of his person to effect that taking was also unjustified. *Accord Crochran*, 748 F. App'x at 685)); *see also Johnson ex rel. X.M. v. Russell*, No. 1:22-cv-12638, 2024 WL 4728904, at *2 (E.D. Mich. Oct. 7, 2024) ("Like Fourth Amendment searches, Fourth Amendment seizures are unreasonable if they are unjustified at their inception . . . ." (citing *Crochran*, 748 F. App'x at 6850).

The court finds that the seizure of the plaintiff's person to effect the seizure of his phones was unjustified at its inception and therefore unreasonable under the Fourth Amendment.

*2. Excessive Force*

The plaintiff described Chambers' alleged use of force: Chambers allegedly grabbed his left forearm and "swings [Lamanna] around up against the wall," pinning him against the wall with his right arm up against [Lamanna's] chest," while also briefly pushing his hip against him. (Lamanna Dep. 57– 63.) Chambers took one phone out of the plaintiff's right and hand and then, after patting him down, removed the other phone from his back pocket. (*Id.* at 58.) The plaintiff was not physically injured, though he apparently maintains that he suffered emotional injury. (*Id.* at 66.)

Excessive force claims are reviewed "under the Fourth Amendment's 'objective reasonableness' standard." *Reed v. Campbell Cnty.*, 80 F.4th 734, 747 (6th Cir. 2023) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). The operative question is "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (internal quotation marks and citations omitted). In making this assessment, the court should consider such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396).

Though "[n]ot every push or shove . . . violates the Fourth Amendment," *Graham*, 490 U.S. at 396, the Sixth Circuit has "never imposed a *de minimis* injury requirement for Fourth Amendment excessive-force claims," *Reed*, 80 F.4th at 750 (citing *Williams v. Maurer*, 9 F.4th 416, 439–40 (6th Cir. 2021); *Morrison v. Bd. of Trs.*, 583 F.3d 394, 406–07 (6th Cir. 2009) (collecting cases)). Moreover, "[e]ven minor uses of force are unconstitutionally excessive if they are 'totally gratuitous.'" *Id.* at 749 (quoting *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 772 (6th Cir. 2004)). In *Reed*, the Sixth Circuit held that "[a]ny force used to accomplish an unlawful detention could be deemed unreasonable under the Fourth Amendment," and, therefore, that "a reasonable jury could conclude that [the defendant] used excessive force when he grabbed [the plaintiff], pushed him, and turned him by the shoulder." *Id.* at 750.

Here, while the alleged crime at issue (child pornography) is undoubtedly serious, Lamanna was not suspected of being currently engaged in the production or transmission of child pornography. Although he was trying to leave, he had been told he could leave, and the only reason Chambers was demanding that Lamanna stop was so that he could seize Lamanna's phones—without either a warrant or probable cause. Lamanna did not pose a threat to the officers' safety, and he was not attempting to evade or resist arrest. Under these circumstances, given the absence of any legitimate justification for the stop, a reasonable jury could conclude that Chambers' act of grabbing Lamanna's arm, spinning him around, and pinning him against the wall constituted excessive force.

### C. Qualified Immunity

The court has found that Chambers' acts of seizing the plaintiff's person and his phones violated the Fourth Amendment. In anticipation of that possibility, Chambers raises the defense of qualified immunity, arguing that, even assuming that his actions violated the plaintiff's constitutional rights, the plaintiff bears the burden of showing, at a minimum, "that Chambers

violated clearly established federal law when he seized Plaintiff's cell phones without probable cause to believe evidence of child pornography could be found therein." (Doc. No. 31 at 22–23.)

Generally, "government officials are entitled to some form of immunity from suits for damages." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). As relevant here, police officers, as "government officials" who "perform[] discretionary functions," are generally entitled to qualified immunity, which protects them "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818; *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). In other words, "officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Wesby*, 583 U.S. at 62–63 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Importantly, "'[c]learly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would understand that what he is doing' is unlawful." *Id.* at 63 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)) (some internal quotation marks omitted). That is, "existing law must have placed the constitutionality of the officer's conduct 'beyond debate.' This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (first quoting *al–Kidd*, 563 U.S. at 741; and then quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). When a government official raises the defense of qualified immunity, the plaintiff bears the burden of showing that the defense does not apply. *Crawford*, 15 F.4th at 760.

In response to the defendants' qualified immunity argument, the plaintiff argues that it was clearly established as a matter of law that:

> (1) cell phones carry greater Fourth Amendment protection than a home, *Riley* [*v. California*, 573 U.S.373, 396 (2014)]; (2) warrantless cell phone seizure requires

> both probable cause and a recognized exception, *Riley*, 573 U.S. 373; (3) exigent circumstances require imminent — not merely possible — destruction, *Sangineto-Miranda*, 859 F.2d at 1512; (4) the general deletability of cell phone data does not create exigency, *Crocker v. Beatty*, 886 F.3d [1132, 1136 (11th Cir. 2018)] (denying qualified immunity on this point); (5) a *Terry* stop requires specific and articulable facts tied to the particular evidence at issue, *Terry*, 392 U.S. at 21; and (6) force may not precede announcement of detention, [*Florida v.*] *Bostick*, 501 U.S. [429, 434 (1991)].

(Doc. No. 46 at 23). Based on this clearly established law, the plaintiff argues that

> [n]o reasonable officer could have believed it was lawful to: seize phones a complainant never identified, based solely on the general nature of digital devices, while the subject made no threat to destroy evidence, told the officer the relevant data was already gone on an old device, and offered a legitimate innocent reason for declining to surrender the phones.

(*Id.* at 24.)

The relevant question in this case is whether a reasonable police officer in Chambers' position would have known that he lacked probable cause to seize Lamanna's cell phones. At the time of the incident, it was well established that "[s]eizures of personal property require probable cause." *Tlapanco v. Elges*, 969 F.3d 638, 649 (6th Cir. 2020) (quoting *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 543 (6th Cir. 2002)); *see also Place*, 462 U.S. at 702–03. It was also well established that the seizure of a cell phone, specifically, without probable cause violates the Fourth Amendment. *Accord Dunn v. Does 1–22*, 116 F.4th 737, 753 (8th Cir. 2024) ("Unless [defendant officer] had arguable probable cause to seize the phones, he violated the plaintiffs' clearly established right to be free from unreasonable seizures of their property and is not entitled to qualified immunity.").

While the plaintiff does not point to any factually similar situation in which the Sixth Circuit or the Supreme Court concluded that probable cause was absent, the law is also clear that a police officer is not entitled to qualified immunity if there was "such an utter lack in probable cause that no officer of reasonable competence would have concluded that a warrant should issue."

*Garcia v. Thorne*, 520 F. App'x 304, 308 (6th Cir. 2013) (citations omitted). The particular facts in Chambers' possession that guided his (incorrect) determination that probable cause existed were (1) A.B. reported that Lamanna had put spyware on her phone more than three years ago; (2) she reported seeing nude images of herself on Lamanna's computer more than three years ago; (3) she reported inappropriate (though not blatantly sexual) conduct by Lamanna that allegedly took place approximately three years ago; (4) Lamanna acknowledged that he had helped his mother install spyware on A.B.'s phone and explained the valid reasons for doing so; (5) Lamanna acknowledged that he had received more than one nude image of A.B. more than three years ago as a result of that spyware and explained what he did with them; (6) when Chambers raised the issue of phones, Lamanna told him the images in question were long gone and that his personal cell phone was only eight months old; and (7) Lamanna refused to consent to a search of his phones and became angry and agitated when Chambers told him he had to turn over his phones.

In *Wesby*, the Supreme Court acknowledged that "there does not have to be a case directly on point'" and that "there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby*, 583 U.S. at 64 (internal quotation marks and citations omitted). The court finds that this is such a "rare obvious case"—that is, that no reasonable officer would have concluded from the available evidence that there was probable cause to believe that child pornography would be found on Lamanna's cell phones and that the unlawfulness of Chambers' conduct is sufficiently obvious that a case factually on point is not required. Simply nothing in the record pointed to the existence of images on Lamanna's phone. Even though Lamanna admitted that he had in the past—at least three years ago—been in possession of images of his niece that might qualify as child pornography and were forwarded to a detective for investigation, that

admission alone is not sufficient to give rise to reasonable suspicion, much less probable cause, that such images had been transferred to his phone and were still in existence.

The court finds, in short, that Chambers is not entitled to qualified immunity from suit on the plaintiff's Fourth Amendment claims, and his motion for summary judgment on Counts 1 and 2 will be denied.[12]

**D. Counts 4–6: Municipal Liability Claims Against the City**

Counts 4 through 6 against the City mirror Counts 1 through 3 against Chambers individually. The dismissal of Count 3, the due process claim, against Chambers also requires dismissal of Count 6 against the City.

Counts 4 and 5 are premised upon vague allegations of the City's deliberate indifference to the need to train or prevent officers from committing Fourth Amendment violations, as well as allegations that the violations were caused by the City's "official policies or settled customs and practices." (Compl. ¶¶ 94, 97.) The defendants argue that, even if Chambers is found to have violated the plaintiff's constitutional rights, the City is entitled to summary judgment because the plaintiff has not pointed to any unconstitutional official policies, any evidence regarding the City's training, supervision, or discipline of police officers, or prior instances of similar, unconstitutional conduct. (Doc. No. 31 at 24.) The plaintiff's Response focuses entirely on the City's policy pertaining to the seizure of electronic devices that might contain evidence. And, indeed, HPD Chief Jones ratified the seizure of Lamanna's phones by Chambers in this case, testifying that "anytime an electronic device is involved and it's allowed to leave the custody of law enforcement, there is

[12] Again, the court declines to consider the plaintiff's argument that the search warrant was invalid, because the plaintiff raised this claim for the first time in his Response to the Motion for Summary Judgment.

the potential for destruction of evidence. We have a duty to prevent destruction of potential evidence." (Jones Dep. 26.)

"To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged violation occurred because of a municipal policy, practice, or custom; a municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). In other words, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "[A] municipality can be liable under § 1983 only where its policies are the 'moving force behind the constitutional violation.'" *Id.* at 389 (quoting *Monell*, 436 U.S. at 694). Thus, for a municipality to incur liability, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.* at 385.

The Sixth Circuit has recognized four means by which a plaintiff may show that a municipality's policies or customs were connected to the constitutional violation: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

Lamanna's Response focuses on the second of these means: ratification by an official with final decision-making authority. And, while it is clear this avenue may establish liability under *Monell*, the plaintiff hangs his hat on the wrong peg. He has failed to present any evidence regarding the City's policies pertaining to the assessment of probable cause or the City's training

and supervision of police officers regarding such policies. For the City to be liable for Chambers' incorrect conclusion that probable cause to seize the phones existed, before even getting to the issue of exigent circumstances, the plaintiff must show that the City was somehow responsible for that decision. This he utterly fails to do.

Moreover, the plaintiff has not shown that, if probable cause had existed in this case, the City's policy of seizing electronic devices when there is probable cause to believe that they contain evidence of a crime would have been unconstitutional in this instance. While the Eleventh Circuit has made it clear that the seizure of electronic devices that contain evidence of a crime is not *always* reasonable—for instance, when the device is in the possession of an innocent bystander who has no reason to delete the evidence, *see Crocker*, 886 F.3d at 1136—the Sixth Circuit has indicated that it is "objectively reasonable" to take an electronic device suspected of containing child pornography from the alleged child pornographer at least for the length of time it takes to obtain a search warrant, *Bradley*, 488 F. App'x at 103. Although there was not probable cause in this case to believe that Lamanna's phones contained child pornography images, Lamanna has not shown that the City's policy relating to exigent circumstances was the moving force behind the violation of his Fourth Amendment rights.

In sum, Lamanna has failed to present evidence from which a reasonable jury could conclude that the City was the "moving force" behind the seizure of Lamanna's phones, the seizure of Lamanna's person in order to seize the phones, or the degree of force used to secure Lamanna's person. The City is entitled to summary judgment on the claims arising from these events.

The defendants have not shown, however, that the City is entitled to summary judgment on the plaintiff's claim in Count 5 relating to the duration of the detention of the cell phones. (*See* Compl. ¶ 100.) The defendants have presented essentially no evidence on that issue, and the record

is unclear even as to when Lamanna's cell phones were returned to him or why they were detained for as long as they were. Further, Chief Jones, as official policymaker, appears to have ratified that detention as well. Summary judgment on the detention subclaim against the City, therefore, will be denied.

### E. State Law Claims

The plaintiff asserts state law claims against Chambers for assault, battery, false imprisonment, invasion of privacy, and conversion. With respect to these claims, the defendants argue only that, if Chambers is entitled to qualified immunity on the federal claims, he will also be entitled to state law immunity on the parallel state law claims. In the alternative, they argue that, if the court dismisses all federal claims in this lawsuit, it should decline to exercise supplemental jurisdiction over the state law claims. (*See* Doc. No. 31 at 24.)

Because the court has found that Chambers is not entitled to qualified immunity and has not dismissed all federal claims in this lawsuit, neither argument is availing. Summary judgment on the state law claims, therefore, will also be denied.

## IV. CONCLUSION

For the reasons set forth herein, the Motion for Summary Judgment (Doc. No. 30) filed by defendants City of Hendersonville and HPD Detective Lee Chambers will be granted in part and denied in part. The defendants are entitled to summary judgment on the due process claims set forth in Counts 3 and 6 of the Complaint, and those counts will be dismissed. Count 12, for "recovery of phones," will be dismissed as either moot or abandoned, as neither party addresses or references it in the summary judgment briefing. And any claim based on a warrantless search of the plaintiff's phones will be dismissed as moot, as it is now clear that Chambers obtained a warrant to search the phones.

Otherwise, however, Chambers is not entitled to qualified immunity on Counts 1 and 2 and Counts 7 through 11, and the Motion for Summary Judgment will be denied as to those counts. The City has established that it is entitled to summary judgment on Count 4 and on part of Count 5, but it is not entitled to summary judgment on the plaintiff's Fourth Amendment claim relating to the prolonged detention of his phones, so the Motion for Summary Judgment as to that part of Count 5 will be denied.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge